UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STORMY MAGIERA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:08-CV-1023-G |
| CITY OF DALLAS, | ) | |
| | ) | **ECF** |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

Before the court is the motion for summary judgment of the defendant City of Dallas. For the following reasons, the motion is granted.

I. BACKGROUND

Plaintiff Stormy Magiera ("Magiera") is employed by the City of Dallas as a sergeant with the Dallas Police Department. Defendant City of Dallas' Brief in Support of its Motion for Final Summary Judgment ("Motion") at 1.

On May 22, 2005, Magiera contends that, while she was on the job, a fellow officer, Sergeant Ingram, sexually harassed her by calling her "darling" and physically touching her without her consent. Plaintiff's Second Amended Petition and Request

for Disclosure ("Petition") at 2, *attached to* Defendant City of Dallas' Notice of Removal ("Notice of Removal"). On a shift that began at 5:00 p.m. on May 21, 2005, Magiera was assigned to work with Officer Robert McCall ("Officer McCall"). Oral Deposition of Stormy Magiera dated August 13, 2007 ("Magiera Deposition") at 78, *located in* Defendant City of Dallas' Appendix in Support of its Motion for Final Summary Judgment ("Appendix to Motion") at 471. Officer McCall and Magiera were completing paperwork across the street from the Dreams nightclub when they heard a gunshot. Magiera Deposition at 78-79, *located in* Appendix to Motion at 471-72. They drove to the scene and observed Brandi Hudson ("Hudson") holding a gun and also saw a fight in the parking lot. Magiera Deposition at 80-81, *located in* Appendix to Motion at 473-74. Officer McCall and Magiera pulled their service revolvers and ordered Hudson to drop her gun. *Id*. Hudson dropped her gun. Magiera Deposition at 81, *located in* Appendix to Motion at 474. The officers later confirmed that Hudson had a valid Texas concealed handgun permit. Magiera Deposition at 88, *located in* Appendix to Motion at 478.

Upon running background checks, the officers discovered that the nightclub disc jockey, Mr. Robinson ("Robinson"), was the subject of an outstanding arrest warrant. Magiera Deposition at 86, *located in* Appendix to Motion at 477. He was also intoxicated at the scene. *Id*. Robinson and others began to assault Hudson's brother. Magiera Deposition at 88, *located in* Appendix to Motion at 478. Hudson

then went to her vehicle, retrieved her handgun, and fired a warning shot in the air to interrupt the fight. *Id*. Magiera was approached by Sergeant Ingram. Magiera Deposition at 91, *located in* Appendix to Motion at 479. Sergeant Ingram asked Magiera to "speed the process up and issue some people some tickets so [they] could get out of there." *Id*. Magiera explained that they would be taking people to jail for outstanding warrants and public intoxication. Magiera Deposition at 92, *located in* Appendix to Motion at 480. Sergeant Ingram commanded Magiera to release Robinson because Robinson was not involved in the fight. Magiera Deposition at 93, *located in* Appendix to Motion at 481. Officer McCall and Magiera explained that they had witnessed Robinson actively fighting. *Id*. Sergeant Ingram then became abrasive and directly ordered Robinson's release. Magiera Deposition at 93-94, *located in* Appendix to Motion at 481-82. Magiera complied and removed Robinson's handcuffs. *Id*. Sergeant Ingram also ordered Officer McCall to release Ms. Carmichael, an intoxicated female, whom Officer McCall previously had pepper sprayed. Magiera Deposition at 81, 95, *located in* Appendix to Motion at 474, 483. Sergeant Ingram ordered Magiera to arrest Hudson for discharging a firearm within Dallas city limits, Magiera Deposition at 95, *located in* Appendix to Motion at 483, even though Magiera and Officer McCall had decided not to arrest Hudson because she was protecting her brother's life and felt that she was in imminent danger. Magiera Deposition at 96, *located in* Appendix to Motion at 484.

Thereafter, Sergeant Ingram approached Magiera and said, "Come here, Darling, so I can talk to you." *Id*. Magiera told him not to call her "darling." Magiera Deposition at 98, *located in* Appendix to Motion at 486. He then pulled her to the back of a police car. Magiera Deposition at 96, *located in* Appendix to Motion at 484. She explained that she did not agree with his decision to arrest Hudson. Magiera Deposition at 104, *located in* Appendix to Motion at 487. Sergeant Ingram then rubbed and patted Magiera's arm, stating, "Darling, you just need to worry about the bigger arrests." Magiera Deposition at 104, *located in* Appendix to Motion at 487. He then threw his hand in her face and yelled to Sergeant Harris, Magiera's supervisor, that he needed to "come talk to your girl, because it's obvious I can't." Magiera Deposition at 108, *located in* Appendix to Motion at 488; Motion at 2. Magiera then told Sergeant Harris that she did not want to be referred to in that manner and asked for a control number to be generated on the incident. Magiera Deposition at 108, *located in* Appendix to Motion at 488. Sergeant Harris told Magiera that would not happen, they would speak the next day, and told Magiera to take Hudson to jail. Magiera Deposition at 109, *located in* Appendix to Motion at 489. Magiera classifies Sergeant Harris's refusal to issue as control number as "implied" discrimination and done out of retaliation because Sergeant Ingram and he were friends. Magiera Deposition at 117, *located in* Appendix to Motion at 493. She also claims that Sergeant Harris sometimes stares at her which she deems an act of

retaliation.  Oral Deposition of Stormy Magiera dated October 15, 2008 ("Magiera Deposition II") at 37, *located in* Defendant City of Dallas' Appendix in Appendix to Motion at 558.  Magiera did not classify Sergeant Ingram's comments as sexual advances nor did she believe that he was coming on to her.  Magiera Deposition at 114, *located in* Appendix to Motion at 490.

After Sergeant Ingram's comments to her, Magiera was unable to focus her attention on her job.  Magiera Deposition at 115, *located in* Appendix to Motion at 491.  However, Magiera was never suspended, demoted, terminated, issued a letter of reprimand, or placed on administrative leave.  Magiera Deposition at 130, *located in* Appendix to Motion at 496.  Magiera maintains that she has been denied positions and overtime based on Sergeant Ingram's comments made to her on May 22, 2005.  Magiera Deposition at 137, *located in* Appendix to Motion at 501.  However, she never filed a complaint or grievance with regard to the denial of overtime.  Magiera Deposition at 142, *located in* Appendix to Motion at 506.  Magiera requested a control number with regard to the events on May 22, 2005.  Magiera Deposition at 133, *located in* Appendix to Motion at 498.  Following Magiera's complaint, the City of Dallas initiated an internal affairs investigation and counseled Sergeant Ingram on his inappropriate choice of words.  Memorandum Dated December 17, 2005, *located in* Appendix to Motion at 171-73.

In July and August 2005, Magiera suffered two seizures and was placed on non-driving status after a physical in September 2006. Magiera Deposition at 161, 163, *located in* Appendix to Motion at 512, 514. Magiera admits that she knew that the police department had a policy that an employee needed to be seizure free for two years before regaining driver status, but that she was told it was a "hiring practice . . . not the criteria they go on if you are already employed." Magiera Deposition at 170, *located in* Appendix to Motion at 521; *see also* Motion at 20-21. Magiera contends that her non-driving status is in retaliation for the lawsuit. The City of Dallas, on the other hand, maintains that Magiera was placed on non-driving status due to established policy and that her removal from field training as a result of that status was for Magiera's safety and that of rookie police officers. Motion at 20-21.

Magiera later was transferred to a different station, a move she asserts was caused by the filing of this lawsuit. Magiera Deposition II at 25, *located in* Appendix to Motion at 550.

On February 27, 2006, Magiera filed a charge of discrimination, claiming retaliation and gender discrimination. *See* Charge of Discrimination, *attached to* Appendix to Motion at 869-70. The EEOC subsequently dismissed Magiera's charge of discrimination and issued her a Notice of Right to Sue. Petition at 2; Response at 8.

On September 15, 2006, Magiera commenced this action in the 95th Judicial Court of Dallas County, Texas. On May 21, 2008, Magiera filed her second amended petition and for the first time alleged that the City of Dallas violated a federal law. Notice of Removal ¶ 1. Specifically, her petition alleges retaliation and gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, and the Texas Commission on Human Rights Act of 1983 ("TCHRA"), Texas Labor Code § 21.001 *et seq*. *See generally* Petition. She also avers that the City of Dallas deprived her of a property right in her employment. *Id*. On June 18, 2008, the City of Dallas timely removed the case to this court on the basis of federal question jurisdiction.

## II. ANALYSIS

### A. Evidentiary Burdens on Motion for Summary Judgment

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving parties are entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).[1] "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that

---

[1] The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

a reasonable jury could return a verdict for the nonmoving party." *Id*. The movant make such a showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

Once the movant make this showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992). Summary

judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to her case and as to which she will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

## B. Title VII Claims[2]

Title VII prohibits discrimination on the basis of race, color, religion, sex, or national origin in federal and private employment. *Fitzgerald v. Secretary, United States Department of Veterans Affairs*, 121 F.3d 203, 206 (5th Cir. 1997). Title VII also prohibits retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

### 1. *Sexual Harassment*

A plaintiff may establish a claim for unlawful sexual harassment by proving that discrimination based on sex created a hostile or abusive work environment. *Jones v. Flagship International*, 793 F.2d 714, 719-21 (5th Cir. 1986), *cert. denied*, 479 U.S. 1065 (1987). To set forth a *prima facie* claim of actionable harassment in the work place, a plaintiff must produce evidence that (1) she belongs to a protected group; (2) she experienced unwelcome sexual harassment; (3) the harassment was based on

---

[2] The court will analyze Magiera's TCHRA claims under Title VII precedent. See *Wallace v. Methodist Hospital System*, 271 F.3d 212, 219 n.10 (5th Cir. 2001), *cert. denied*, 535 U.S. 1078 (2002); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999) ("[T]he law governing claims under the TCHRA and Title VII is identical."); see also *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996) (per curiam); *Caballero v. Central Power & Light Company*, 858 S.W.2d 359, 361 (Tex. 1993).

sex; (4) the harassment affected a "term, condition or privilege of employment"; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Id.* at 719-20.

For harassment to be actionable under Title VII, it must be so severe and pervasive that it "alter[s] the conditions of [the victim's] employment and create[s] an abusive working environment." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (quoting *Henson*, 682 F.2d at 904). Whether an environment is "abusive" or "hostile" depends on the totality of the circumstances. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). Pertinent circumstances may include (1) the frequency of the conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Id.*

Magiera incorrectly asserts that the Sergeant Ingram's actions supports a clear inference of discrimination. The comment allegedly made by Sergeant Ingram was that Magiera was a "darling." In keeping with the summary judgment standard, the court will assume that the comment was made. Still, it does not evidence an intent to discriminate on the basis of gender. The comment is -- at best -- no more than a "stray remark," and "'stray remarks' alone will not overcome overwhelming evidence corroborating defendant['s] non-discriminatory rationale." *Sreeram v. Louisiana State University Medical Center-Shreveport*, 188 F.3d 314, 320 (5th Cir. 1999); see also *Brown*

*v. CSC Logic, Inc.*, 82 F.3d 651, 655-56 (5th Cir. 1996).  Further, it does not appear that the alleged conduct greatly impacted Magiera's work performance.

Under the totality of the circumstances, the court finds that any harassment experienced by Magiera was not so severe and pervasive that it could reasonably be perceived as altering the conditions of Magiera's employment.  See *Harris*, 510 U.S. at 22-23.  In addition, the court concludes that the City of Dallas's remedial actions following Magiera's complaints were prompt and reasonable under the circumstances.  See *Waymire v. Harris County, Texas*, 86 F.3d 424, 429 (5th Cir. 1996).

Thus, to the extent that Magiera seeks to hold the City of Dallas liable for "hostile environment" sexual harassment, the court concludes that she has failed to produce evidence on which a reasonable factfinder could decide this claim in her favor.

2. *Retaliation*

Section 2000e-3(a) of Title 42 of the United States Code prohibits an employer from "discriminat[ing] against any of his employees . . . because [the employee] has . . . opposed any practice made an unlawful employment practice by this subchapter."  This court applies the three-step analysis utilized by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), to analyze Magiera's claims of discriminatory retaliation.  *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1121-22 (5th Cir. 1998); *Long v. Eastfield College*, 88 F.3d 300, 304 (5th

Cir. 1996). If Magiera establishes a *prima facie* case of retaliation, a presumption of discrimination arises, and the City of Dallas must articulate a legitimate, non-discriminatory reason for the employment action of which Magiera complains. See *Sherrod*, 132 F.3d at 1122; *Long*, 88 F.3d at 304-05; *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 267 (5th Cir. 1994). If the City of Dallas satisfies this burden of production, Magiera must prove the ultimate issue of retaliation by showing that the reason offered is a pretext for prohibited discrimination. *Sherrod*, 132 F.3d at 1122; *Long*, 88 F.3d at 305; *Grizzle*, 14 F.3d at 267.

To establish a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in an activity protected under Title VII; (2) an adverse employment action occurred; and (3) there was a causal connection between the protected activity and the adverse employment decision. *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992). The causal connection required is cause-in-fact or "but for" causation. *Jack v. Texaco Research Center*, 743 F.2d 1129, 1131 (5th Cir. 1984). The City of Dallas can avoid liability by showing a legitimate non-discriminatory rationale which explains the adverse employment action. *Id.* Once such a non-discriminatory explanation is offered, Magiera cannot prevail unless she shows that the City of Dallas's explanation is a pretext for discrimination. *Shirley*, 970 F.2d at 42; *Jack*, 743 F.2d at 1131; *Jones*, 793 F.2d at 728.

Assuming *arguendo* that Magiera has adduced sufficient evidence to establish her *prima facie* case of retaliation, the court must next address the City of Dallas's proffered explanation and Magiera's ultimate proof. The City of Dallas avers that Magiera cannot provide proof as to any acts she claims were materially adverse to her. Motion at 17. For example, Magiera cannot prove who clicked her on her radio and cannot refute that her non-driving status was the result of her seizures and established department policy. *Id*. at 19-24. Magiera cannot dispute that internal affairs must investigate complaints against a police officer -- in her case, she was cited for the use of profanity and a second case was deemed inconclusive. *Id*. at 25. Although Magiera claimed she was retaliated against by receiving a one day suspension, she ultimately admitted that she had never been suspended. *Id*. at 24-28. Magiera could not recall when she had been denied overtime, and the City of Dallas maintained that overtime is determined by the order of sign up, availability, and seniority. *Id*. at 29. Magiera's further complaints about lack of rapport with certain officers or being ostracized by some co-workers lacks specificity. The City of Dallas maintains that Magiera's claim that her lack of selection for some lateral positions was retaliatory when in fact none of those selections would result in a promotion. *Id*. at 36. In fact, Magiera has been promoted since May 2005 and earns a higher salary than she did at that time. *Id*. To avoid summary judgment, Magiera must rebut the City of Dallas' legitimate explanations by providing evidence from which a reasonable jury could

- 13 -

conclude that unlawful retaliation was the "cause-in-fact" of her injury. See *Sherrod*, 132 F.3d at 1123.

Upon review of the evidence, the court concludes that Magiera has failed to provide proof from which a reasonable jury could find that retaliation was the cause-in-fact[3] of her complaints. Accordingly, City of Dallas's motion for summary judgment on Magiera's claim of retaliation is granted.

### 3. *Due Process Claim*

Finally, Magiera contends that the City of Dallas deprived her of a property right in her employment that would entitle her to process  Petition at 4. Public employees who have a property interest in their employment also have a substantive due process right in their continued employment. *Schaper v. City of Huntsville*, 813 F.2d 709, 717 (5th Cir. 1987). To state a viable substantive due process claim, an employee must provide evidence of an arbitrary and capricious deprivation of her employment. *Id*. Even if the court assumes *arguendo* that Magiera had a property interest in her employment, she has not demonstrated that the City of Dallas has arbitrarily or capriciously deprived her of that property interest. Most notably, her employment with the City of Dallas has never been terminated. Because Magiera has

---

[3] The "cause-in-fact" analysis of pretext requires proof of a significantly stronger relationship between the adverse employment action and the alleged retaliation than is required to show a "causal link" for the plaintiff's *prima facie* case. *Sherrod*, 132 F.3d at 1122 n.8; *Long*, 88 F.3d at 305 n.4.

failed to establish an issue of material fact on this essential element of her claim, the court must grant summary judgment in favor of the City of Dallas.

## III.  CONCLUSION

For the reasons discussed above, the City of Dallas's motion for summary judgment is **GRANTED**.

**SO ORDERED**.

June 5, 2009.

A. JOE FISH
**Senior United States District Judge**